UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


LORINDA SMITH,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )        NO.: 2:11-CV-379
                                        )
LVNV FUNDING, LLC, *ET AL*.,            )
                                        )
            Defendants.                 )

## MEMORANDUM OPINION AND ORDER

This Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., case is

before the Court on Defendant Hosto & Buchan, PLLC's ("Hosto" or "defendant") Motion For

Summary Judgment, [Doc. 149]. In its motion, and pursuant to Federal Rule of Civil Procedure

56 and 10(c), Hosto adopts by reference the same arguments advanced in Defendants LVNV

Funding, LLC ("LVNV") and Steve Hawkins's ("Hawkins") Motion for Summary Judgment

[Doc. 99]. The plaintiff responded, [Doc. 153], and the defendant replied, [Doc. 155]. For the

reasons stated below, the defendant's motion is GRANTED.

## I. BACKGROUND

Many of these facts are also set forth in the Court's March 31, 2014 Memorandum

Opinion and Order, [Doc. 154]. It is undisputed that the plaintiff applied for a credit card with

Credit One Bank, [Doc. 106, pg. 4 and Doc. 120-1, pg. 6]. At her deposition, she identified her

signature on the application. [Doc. 106, pg. 4, 120-1, pg. 6].[1] The plaintiff admits that she

---

[1] The record reflects a credit agreement accompanied this signature page. [Doc. 120-1]. The plaintiff argues in her
Response, [Doc. 153, pg. 7], that this agreement was dated a year prior to her November 27, 2007 application. The
defendant argues this was the actual contract, and it was produced as a result of a subpoena. There is nothing in the

incurred a credit card debt and then defaulted on that debt. [Doc. 106, pg. 5]. The debt was eventually assigned to LVNV. On August 23, 2010, Hosto sent a collection letter to the plaintiff, and it stated the current balance on the account was $2,535.08.[2] [Doc. 100-2, pg. 7]. On December 21, 2010, Hosto filed a collection lawsuit against the plaintiff in state court on behalf of LVNV. Attached to the civil warrant was an affidavit of sworn account signed by Hawkins, an authorized representative of LVNV. The warrant sought a money judgment in the amount of "$3,041.18, plus the cost of this cause by reason of a suit filed on a sworn account, here to the Court in the principle [sic] amount of $2,329.45 due and payable from the Defendant, accrued prejudgment interest in the amount of $245.84, accruing until the date of judgment at the contract rate of interest which is 6% per annum, reasonable attorney's fees in the amount of $465.89, all of which shall bear post-judgment interest at the rate of ten (10%) percent per annum beginning from the date of judgment." [Doc. 18-1, pg. 1]. The affidavit stated that as of the date of assignment, the plaintiff owed "$2,329.45 plus any additional accrued interest." [Doc. 18-1, pg. 2].

Hosto sent the plaintiff a letter on January 18, 2011, and it stated that the current balance was $2,723.87. [Doc. 153-1, pg. 1]. At some point, the plaintiff retained an attorney after the civil suit was filed in General Sessions Court. [Doc. 106, pg. 8].[3] On March 15, 2011, the plaintiff filed a sworn denial which stated, "I have not entered into any agreement with LVNV for the repayment of debt or otherwise. I do not believe that I owe any money to LVNV." [Doc. 18-2, pg. 1]. On August 19, 2011, Hosto sent a letter to plaintiff's counsel, and it stated the current balance was $2,805.81. [Doc. 153-2, pg. 1]. On September 26, 2011, the state suit was

---

record directly from the plaintiff affirmatively denying that this was the actual document other than argument from counsel.

[2] The Court gleans from the record in this case that the plaintiff could not remember whether she received this letter or not. See [Doc. 106].

[3] The exact date counsel was retained is unclear, but it appears to have been after the January 18, 2011 letter.

2

non-suited. [Doc. 1, ¶ 36]. The plaintiff filed this federal action in this Court on December 20, 2011. [Doc. 1].

The plaintiff alleges that the defendants violated several provisions of the FDCPA by:

> (1) using any false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt, 15 U.S.C. § 1692e;
>
> (2) falsely representing the "character, amount, or legal status" of the debts, 15 U.S.C. § 1692e(2)(A);
>
> (3) threatening to take any action that cannot legally be taken or that is not intended to be taken, 15 U.S.C. § 1692e(5);
>
> (4) communicating to any person credit information which is known or which should be known to be false, 15 U.S.C. § 1692e(8);
>
> (5) using a false representation or deceptive means in an attempt to collect the debts, 15 U.S.C. § 1692e(10);
>
> (6) using unfair or unconscionable means to collect or attempt to collect a debt, 15 U.S.C. § 1692f; and
>
> (7) collection of any amount (including interest, fees, etc.) unless such amount was expressly authorized by the agreement creating the debt or is permitted by law, 15 U.S.C. § 1692f(1).

Plaintiff also asserts that LVNV is liable for the acts and omissions of Hosto and Hawkins under the theory of *respondeat superior*.

On August 20, 2013, Defendants LVNV and Hawkins filed a Motion for Summary Judgment, [Doc. 99]. The motion sought summary judgment as to all the FDCPA subsections listed above and requested "that this Court grant their Motion for Summary Judgment and dismiss Plaintiff's claims against [them], in their entirety and with prejudice," [Doc. 99, pg. 2]. They argued in their Memorandum in Support, [Doc. 100], regarding the collection amounts allegations as follows:

3

Previously, to survive Rule 12, Plaintiff made broad allegations, suggesting that the LVNV Defendants engaged in intentionally deceptive practices. Plaintiff alleged that the LVNV Defendants used false, deceptive, and misleading representations in the Civil Warrant, and that Defendant LVNV sought to recover an amount not authorized by the underlying agreement or permitted by law. (*See, e.g.*, Compl. at ¶¶ 50, 77, 79). Plaintiff also claimed that the LVNV Defendants deliberately employed a business model premised on not obtaining evidence of the alleged debt, not engaging in a reasonable or adequate investigation prior to filing the affidavit, and using sworn affidavits containing allegedly false, deceptive, and misleading statements and representations. (*See, e.g.*, Compl. at ¶¶ 40-44, 65, 69, 72-74.) Without offering any specific facts, Plaintiff claimed that Hawkins prepared such a flawed affidavit. (*Id*. at ¶¶ 60-61.)

In his sworn Affidavit, Hawkins reported that LVNV's business records covering Plaintiff's account, maintained in the ordinary course of business, were a compilation of the information provided upon the acquisition of the Plaintiff's account. (*See* King Aff. Ex. E.) From the LVNV business records, Hawkins confirmed the accuracy of the specific account information and the principal amount owing. (*Id*.) Nevertheless, Plaintiff alleged, without offering any specific facts, that the contents of the Hawkins Affidavit were "false, deceptive, and misleading." Now, however, Plaintiff must present evidence demonstrating she actually can prove that allegation.

If Plaintiff cannot present facts establishing either that Plaintiff did not owe the underlying debt or that the stated principal amount is not accurate, she has no claim. As previously noted, Plaintiff admits both that she opened the Credit One account and that she defaulted on it. (Smith Dep. at pp. 29:9-12, 31:12-18.) Further, the principal amount listed as due and owing in the Civil Warrant is identical to the principal amount stated to be owing in the Hawkins Affidavit, which is itself consistent with the amount shown as due in the March 3, 2009 statement on the account. (Compare King Aff. Exs. H, E, and G.) Though Plaintiff maintains that she was confused because the total amount sought by the Civil Warrant was not consistent with the principal amount Steve Hawkins swore in his affidavit to be due and owing, she admits that the principal amount claimed is consistent as between the March 3, 2009 statement, the Civil Warrant and the Hawkins Affidavit. (Smith Dep. at pp. 46:3-47:9.)

Nor can Plaintiff establish facts necessary to show that the amount of the debt referenced in the Hawkins Affidavit was not accurately stated. Hawkins' Affidavit contains a correct recitation of the information contained in LVNV's business records (Ex. E),

and LVNV's records are accurately based on information obtained from Credit One Bank with respect to Plaintiff's account. (Compare Ex. E and Ex. G.) Plaintiff has no probative facts that show otherwise. In the absence of offering any credible conflicting evidence, Plaintiff has no actionable claim under § 1692e(2)(A).

Furthermore, Plaintiff cannot prove that the information the LVNV Defendants communicated to the General Sessions court, the general public, or Plaintiff herself, was false, or that the Defendants knew or should have known such information was false. The LVNV Defendants again put Plaintiff to the test to establish that she can produce genuine facts to prove her claim that the LVNV Defendants violated § 1692e(8). Otherwise, if Plaintiff cannot -- and the LVNV Defendants certainly contend that she cannot – then Plaintiff's claim deserves dismissal.

In the same vein, Plaintiff can offer no genuine facts to support her contention that the LVNV Defendants made false representations in violation of § 1692e(10). To be entitled to go forward with this claim, Plaintiff must "put up or shut up." She must present material, probative facts proving that false statements, in fact, were made. If there is no evidence that Plaintiff can produce to demonstrate that the LVNV Defendants used a false representation or a deceptive means to collect Plaintiff's debt, then Plaintiff's claim likewise must fail.

Accordingly, with respect to the collection lawsuit, generally, and the Hawkins Affidavit, in particular, the LVNV Defendants contend that Plaintiff cannot establish the requisite facts necessary to prove that the LVNV Defendants are liable for alleged violations of the FDCPA. Accordingly, the Court should dismiss the claims asserted under 15 U.S.C. §§ 1692e(2)(A), 1692e(8), and 1692e(10).

[Doc. 100, pgs. 8-11] (footnotes omitted).

On August 22, 2014, the plaintiff filed a Motion for Partial Summary Judgment, [Doc. 108], solely related to the alleged violation of section 1692e(5) by LVNV for filing a collection lawsuit without being licensed as a collection service in Tennessee. There was no mention of the collection amounts issue in this filing.

On September 13, 2013, the plaintiff filed a Response, [Doc. 120], to Defendants LVNV and Hawkins's Motion for Summary Judgment. The Response states:

Defendants' claims that Plaintiff has failed to show that the Civil Warrant filed by LVNV and Hawkins's sworn affidavit was a false representation of the character, amount, or legal status of the debt and that Defendants did not need competent proof when they brought the underlying state court action evince a fundamental misunderstanding of Plaintiff's allegations. Plaintiff's fundamental claim for this violation is that Defendants filed the collection lawsuit without possessing any competent evidence they could use to establish that Plaintiff owed a debt to LVNV, and knowing that they did not intend to obtain such evidence, if challenged, is the gravamen of what makes Defendants' conduct violative of the FDCPA. To state the cause of action simply: Defendants filed a state court lawsuit with the full knowledge that, when time came to "put up or shut up", Defendants would have to do the latter because they could not offer any competent evidence that Plaintiff was obligated to LVNV in any way, much less as to the differing amounts they alleged she owed.

There is a clear distinction between Plaintiff's allegations and Defendants' argument that they did not need the ability to prevail when they filed the state court action. Defendants argue that they are entitled to summary judgment because "filing a lawsuit supported by the client's affidavit attesting to the existence and amount of a debt [is] not a false representation about the character or legal status of a debt, nor is it unfair or unconscionable". Doc. 100, p. 8, first full ¶. Defendants miss the point entirely. *See Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) (Plaintiff does not complain of injuries caused by the state court action. Instead, Plaintiff filed an independent federal claim that Defendant injured Plaintiff when it filed a false affidavit). Plaintiff's argument is that any obligation claimed by Defendants in the collection lawsuit was a false representation in violation of 15 U.S.C. § 1692e(2)(A). Defendants did not file the collection lawsuit "supported by the client's affidavit attesting to the existence and amount of a debt", but filed it relying solely on Hawkins's sworn affidavit. An affidavit which could not have been based on Hawkins's personal knowledge of a Credit One Bank, N.A. ("Credit One") debt as required under state law because, as evidenced by Defendants serving a subpoena on Credit One in the present case, Defendants knew they did not possess any records of Credit One at the time Hawkins signed the sworn affidavit filed in support of the civil warrant served on Plaintiff. See subpoena issued by Defendants to Credit One attached as Exhibit 1 to this Response (hereinafter "Doc. 120-1"). Defendants did not file the state court action with the intention to litigate the matter in good faith, but to obtain a default judgment without producing any evidence Plaintiff owed a debt to

LVNV and the amount owed. Defendants now seek summary judgment demanding that Plaintiff prove her case before trial, yet they seek shelter in an argument that their failure to prove the state court case at any point in time is excusable grounds to deny Plaintiff her day in court.

[Doc. 120, pgs. 3-5] (footnote omitted). The next several pages of the Response discuss the alleged violations for filing suit in state court without the intention to prove the suit if challenged and the lack of personal knowledge by Hawkins, considering the suit is based on his sworn account. See [Doc. 120, pgs. 5-10]. Thus, the plaintiff mainly focuses on these two issues.

The Response does, however, address the collection amounts issues in a limited way. It states:

Even a cursory review of the civil warrant and sworn affidavit shows each is demanding a different amount. The civil warrant requests $2,329.45, "accrued prejudgment interest in the amount of $245.84, accruing until the date of judgment at the contract rate of interest which is 6% per annum, reasonable attorney's fees in the amount of $465.89", while the sworn affidavit states that $2,329.45, plus any additional accrued interest, is owed. Doc. 1, ¶¶ 21, 23; Doc. 18-1, pp. 1, 2, ¶ 5. Defendants never mention any amounts in their Motion and supporting Memorandums, but just keep referring to the "principal amount". Docs. 99 and 100, generally. Also, Defendants have not produced a contract signed by Plaintiff allowing them to add attorney fees or contract interest to the principal. Credit One's subpoena response shows a copy of a cardholder agreement dated November 2006, over a year prior to the date of the application signed by Plaintiff on November 27, 2007. Doc. 120-1, pp. 8-15. Without the contract on which Defendants allegedly relied to file the collection lawsuit, they may not recover attorney fees or a contract rate of interest on the underlying debt. *Holcomb v. Cagle*, 277 S.W.3d 393, 397-98 (Tenn. Ct. App. 2008) (perm. app. den. Sup. Ct., December 15, 2008). Despite Defendants' contentions Plaintiff does not have to "show that the amount of the debt referenced in the Hawkins Affidavit was not accurately stated" to be successful on her § 1692e(2)(A) claim. Doc. 100, p. 10, first full ¶, first sentence. She just has to show that the different amounts claimed in the communications in the form of the civil warrant and sworn affidavit are false or would be deceptive or misleading to the least sophisticated consumer. As named plaintiff in the collection

lawsuit, LVNV should have known the amounts demanded in the civil warrant and sworn affidavit are completely different amounts, and that one of them was false. Doc. 1, ¶¶ 21, 23; Doc. 18-1, pp. 1, 2, ¶ 5. In *Robinson*, *supra*, Judge Collier, relying on *Stonecypher v. Finkelstein Kern Steinberg & Cunningham*, 2:11–CV–13, 2011 WL 3489685 (E.D. Tenn. Aug. 9, 2011) and very similar facts as the present case denied the defendants motion for summary judgment on these issues. *Robinson*, at *8.

This same facts and argument stated above would be applicable to Plaintiff's claim under §§ 1692e, 1692e(5), 1692f, and 1692f(1) that Defendants actions would be false, deceptive, misleading, and unfair to the least sophisticated consumer because part of the amount demanded in the civil warrant and sworn affidavit included interest and attorney fees that could not be lawfully received by Defendants without admissible evidence of a contract that expressly authorized allowance of these amounts, and was the threat to take action (collect contract interest) that cannot legally be taken without a signed contract.

. . . .

Defendants' argument that Plaintiff is unable to make out claims for violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1) completely ignores the applicable "least sophisticated consumer" standard. See, Doc. 100, pp. 7-11, ¶ II. A, pp. 15-16, ¶ II. B., 2. The clearly different amounts in the civil warrant and sworn affidavit are two communications that create a genuine issue of material fact for a jury to determine if one or both of the communications are false or whether they would be deceptive and/or misleading to the least sophisticated consumer. In *Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, at 613-14 (6th Cir. 2009), the Sixth Circuit held that whether defendants' representations made in a state court collection lawsuit was unfair or deceptive should have gone to the jury.

[Doc. 120, pgs. 10-12].

On September 20, 2013, Defendants LVNV and Hawkins filed a Reply, [Doc. 122]. It stated:

The LVNV Defendants do not dispute that, in the Sixth Circuit, courts apply a "least sophisticated consumer" standard when evaluating whether conduct is violative of the FDCPA. In her opposition to the LVNV Defendants' Motion for Summary

Judgment, however, Plaintiff claims that, even on "cursory review," the civil warrant and sworn affidavit each demand a different amount. (Docket I.D. No. 120 at p. 10.) First of all, the sworn affidavit does not demand anything. (*See* Docket I.D. No. 18-1 p. 2.) Regardless, the affidavit provides that Defendant Hawkins, after reviewing Defendant LVNV's records, affirms, among other things that the purchased balance owing on Plaintiff's account is "$2,329.45 plus any additional accrued interest." (*Id.*) The Civil Warrant, for its part, states that the money judgment of $3,041.18 being sought by LVNV included principal in the amount of $2,329.45 (the exact same amount set forth as being owed in the Hawkins Affidavit), accrued prejudgment interest in the amount of $245.84, and attorneys fees totaling $465.89. (*See* Docket I.D. No. 100-2, p. 22.) As between these documents, there is no inconsistency.

       In support of her argument, Plaintiff also points to an amount listed as due in a August 23, 2010 collection letter to Plaintiff from Defendant Hosto & Buchan, PLLC. (Docket I.D. No. 120, p. 10 n.3.) As the LVNV Defendants set forth in their opening brief, however, Plaintiff cannot in good faith allege she was confused by a letter that, according to her own deposition testimony, she has no recollection of receiving. (Docket I.D. No. 100, p. 10 n.3, Docket I.D. No. 107 at p. 6.)

[Doc. 122, pg. 6-7]. On October 10, 2013, LVNV and Hawkins's counsel entered an appearance on behalf of Hosto, [Doc. 128]. Then LVNV and Hawkins filed a Supplemental Brief, [Doc. 129], on January 16, 2014, asking the Court to consider the ruling in *White v. Sherman Financial Group, LLC*, No. 3:12-CV-404, 2013 WL 5936679 (E.D. Tenn. Nov. 4, 2013) (Varlan, J.). The defendants stated:

       Granting partial summary judgment in favor of the defendants, the *White* court found, inter alia, that:

       The plaintiff had presented no evidence that the amount of debt set forth in the Affidavit of Indebtedness was false. *White*, 2013 WL 5936679, *5;

       The Affidavit of Indebtedness and the Civil Warrant are not inconsistent with one another and would not be deceptive to the least sophisticated consumer. *Id*. at *6; and

The Civil Warrant and attached Affidavit of Indebtedness constituted a "formal pleading" for purposes of the FDCPA. *Id.* at *9.

The *White* court also found that the plaintiff had presented no evidence that the defendants had attempted to collect an amount not authorized by the underlying agreement or permitted by law, and therefore the plaintiff was not entitled to a trial on those causes of action. *See White*, 2013 WL 5936679, at *6.

. . . .

Because the factual record in *White* is virtually identical to the above-captioned cases, Defendants respectfully ask this Court to consider the reasoning in *White* and similarly grant summary judgment in favor of Defendants.

[Doc. 129, pgs. 2-3] (footnote omitted).

Then, on March 10, 2014, Hosto filed a Motion for Leave to File a Motion for Summary Judgment, [Doc. 146]. The Motion for Summary Judgment incorporated and adopted all arguments made by LVNV and Hawkins. It did not raise new issues, but moved for summary judgment as to all claims. The Court granted the motion for leave to file a motion for summary judgment on March 11, 2014, [Doc. 148]. The plaintiff filed a Response on March 26, 2014, [Doc. 153].

In plaintiff's Response, she stated that the motion "fail[s] to address additional claims made in Plaintiff's Complaint," [Doc. 153, pg. 2], specifically regarding collection amounts. The plaintiff spends much time discussing *Robinson v. Sherman Financial Group, LLC*, No. 2:12-CV-30, 2013 WL 3968446 (E.D. Tenn. July 31, 2013) (Collier, J.). The plaintiff again stresses that the different amounts between the warrant and affidavit show that one was misleading, deceptive or false; that attorney's fees and contract interest may not be recovered without a produced contract allowing such collection; and that LVNV is vicariously liable to the plaintiff for Hosto's actions. [Doc. 153, generally]. The plaintiff fails to clearly argue that the

10

specific interest rates listed in the warrant and affidavit were misleading, deceptive or false. To be sure, however, the plaintiff does rely on cases which addressed differing interest rates, and she points out in the "Facts" section of the brief that interest rates on several documents in the record vary. In addition, plaintiff fails to argue that the interest rates listed are not allowed by Tennessee law despite those specific contentions in her Complaint, [Doc. 1, ¶ 47 (civil warrant) and ¶¶ 75, 77 (affidavit as to "unwritten contracts")]. Instead, the plaintiff again focuses mainly on the fact that the amounts vary between the warrant and affidavit and that the defendants have not produced the actual contract that states interest and attorney's fees are allowed to be collected per the agreement.

Prior to the Reply being filed by Hosto, the Court issued its Memorandum Opinion and Order on LVNV and Hawkins's joint motion for summary judgment. Regarding the arguments that either the collection amount in the warrant or affidavit was misleading, deceptive or false because they are inconsistent and that the defendants could not collect attorney's fees or interest without producing the contract, this Court relied on *White*, 2013 WL 5936679 at *6. The Court stated, "Also similar to *White*, this Court concludes that there is no genuine issue of material fact as to the plaintiff's arguments regarding collection amounts in violation of sections 1692e or 1692f." [Doc. 154, pg. 7].[4] Finally, the Court stated, "In addition, by separate order, this Court will address Hosto & Buchan, PLLC's ("Hosto") Motion for Summary Judgment, [Doc. 149], considering the plaintiff's Response, [Doc. 153], and the assertion that there is an additional claim as to Hosto." [Doc. 154, pg. 20].

Hosto filed a Reply on April 9, 2014, [Doc. 155]. The defendant states essentially that the Court properly relied upon the reasoning in *White*. [Doc. 155, generally]. The defendant argues that the amounts listed in the warrant and affidavit are not misleading, deceptive or false

---

[4] In retrospect, the Court should have elaborated more upon its reasoning on these two issues and will do so below.

11

and gives several reasons why the additional letters mentioned by the plaintiff do not support her contention. Hosto also argues that they have produced the actual agreement which specifically authorizes the collection of attorney's fees and interest. Hosto does not thoroughly address the argument regarding different interest rates listed. Similar to the plaintiff's Response, the Reply just alludes to it slightly. Finally, there is no discussion on whether the specific interest rates listed in the warrant are allowed by Tennessee law or whether the language regarding interest rates in the affidavit are allowed by Tennessee law regarding "unwritten" contracts.

This Court admits that it has been difficult to discern the actual claims and arguments put forth by the plaintiff. Perhaps due to the difficulty in understanding the Complaint and plaintiff's filings, defendants' filings have likewise not been a model of clarity. Considering the entire record and the specifics listed above, this Court will address the following issues:

1. Whether all defendants violated various sections of the FDCPA due to the warrant and affidavit listing "inconsistent" amounts (addressed briefly in prior opinion)?;

2. Whether all defendants violated various sections of the FDCPA because the warrant and affidavit requested interest and attorney's fees and the defendants have allegedly failed to produce a contract allowing for such collection (addressed briefly in prior opinion)?;

3. Whether all defendants violated various sections of the FDCPA because the specific interest rates stated in the warrant, affidavit, and other filings in the case were different (not specifically raised by plaintiff in prior summary judgment motion filings)?;

4. Whether all defendants violated various sections of the FDCPA because the interest rates listed in the warrant and affidavit were for rates not allowed by Tennessee law (not specifically raised by plaintiff in prior summary judgment motion filings)?; and

12

5.  Whether there is an issue of fact regarding vicarious liability (not specifically raised by plaintiff in prior summary judgment motion filings)?[5]

The Court will discuss each issue in turn after setting forth the standard of review, addressing a procedural argument regarding the filing of this motion for summary judgment, and a review of relevant FDCPA cases.

## II. STANDARD OF REVEW

The summary judgment standard is well settled.  Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.  56(c).  In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To refute such a showing, the non-moving party must present some significant, probative evidence indicating the

---

[5] The plaintiff alleges issues three, four and five in her Complaint.  However, she does not assert them in her Response.  Technically, these three issues are waived because of the failure to address them in the Response and, thus, the failure to carry the burden to show there is a genuine issue for trial.  However, because these issues are closely related to issues one and two, the Court will address them in further detail.

The Complaint also alleges two other issues in paragraphs 77 and 78.  First, the plaintiff claims that the "principal had not been correctly reduced due to misapplication of payments to the balance owed as a result of the addition of interest at a rate greater than allowed under Tennessee law for unwritten contracts."  [Doc. 1, pg. 18, ¶ 77].  Second, the plaintiff alleges that the defendant communicated credit information which it knew or should have known to be false in violation of section 1692e(8).  [Doc. 1, pg. 19, ¶ 78].  Aside from the mere mention of this second allegation in a conclusory fashion in the Response, these issues are not developed at all.  Therefore, the plaintiff has failed miserably to show that there is a genuine issue for trial, and the Court will not address them further.

necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id*. A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

Regarding the FDCPA, it was passed to eliminate "abusive, deceptive, and unfair debt collection practices." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting 15 U.S.C. § 1692(a)). The Sixth Circuit has noted that the act is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the face of an innocent and/or *de minimis* violation. *See Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). While § 1692e lists a number of examples of false or misleading representations, the text

14

of the statute itself indicates that the examples are not meant to limit its prohibition on the use of false, deceptive or misleading representations in connection with the collection of a debt. 15 U.S.C. § 1692e. Likewise, § 1692f contains the same language, making clear that the examples set forth therein do not "limit[ ] the general application" of its prohibition on the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f. The Seventh Circuit recently observed that the phrase "unfair or unconscionable" used in § 1692f "is as vague as they come." *Beler v. Blatt, Hasenmiller, Leibsker & Moore*, 480 F.3d 470, 474 (7th Cir. 2007).

In assessing whether particular conduct violates the FDCPA, courts apply "the least sophisticated consumer" test to objectively determine whether that consumer would be misled. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006); *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992). The least sophisticated consumer test is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (quotations and citation omitted). In addition, "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." *Clark v. Lender Processing Svs.*, -- Fed. App. --, 2014 WL 1408891, at *6 (6th Cir. Ap. 14, 2014) (citing *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010)).

The issues below are addressed applying this standard. This is an objective test that asks whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011). The least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness

to read a collection notice with some care." *Colomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).

## III. ANALYSIS

### A. Whether the instant motion was properly filed?

The plaintiff first argues that Hosto's motion is deficient as a matter of law because it improperly adopts and incorporates LVNV and Hawkins's arguments in a way not "contemplate[d]" by Rule 10(c), [Doc. 153, pg. 1]. This Court finds this argument is without merit. This Court recognizes that there are times arguments can be improperly incorporated by reference. However, in this Court's discretion and because of the similar procedural posture of related cases of which both sides' counsel are well aware due to their involvement, it finds that this is not one of them.

### B. Review of some relevant case law

Over the last several years, hundreds of these FDCPA cases have been filed in this district, mostly by the same lawyers who represent plaintiff. As a result, the issues raised in this case have been addressed by several other judges in this district. A brief review of some of these cases sheds some light on, and is helpful in the resolution of, some of these issues.

In *Stonecypher v. Finkelstein Kern Steinberg & Cunningham*, No. 2:11-CV-13, 2011 WL 3489685, at *1 (E.D. Tenn. Aug. 9, 2011) (Mattice, J.), Judge Mattice decided a motion to dismiss pursuant to Rule 12(b)(6). The defendant sent plaintiff the first collection letter which stated that he owed $1,622.42. *Id*. A second letter stated he owed $1,622.42. Attached to this letter were two monthly statements with a balance of $1,707.18 and $1,749.77 and an interest rate of 29.99 percent. *Id*. The defendant then filed a Civil Warrant in state court, and it stated that the amount due was $1,622.42 plus interest at the contract rate of 10 percent, attorney's fees

16

and court costs. *Id*. Plaintiff asserted a violation of section 1692g(a) because the defendant failed to indicate interest was accruing and failed to clarify the amount of the debt within five days of the initial communication. *Id*. at *5. Plaintiff also claimed a violation of section 1692e(2)(A) as to the warrant for making false representations as to the amount of the debt. *Id*.

Judge Mattice found as to the claim that the defendant failed to clarify the amount of the debt within five days of the initial communication that plaintiff successfully stated a claim based on the documentation submitted. *Id*. Judge Mattice further found a stated "possible" claim for a violation of 1692e(2)(A) because of the varying amounts and interest rates on the documentation submitted. *Id*. He found that "the failure to reference an interest rate, attorneys fees, or costs in any prior communication is sufficient for the Court to conclude that Plaintiff has alleged a possible claim that the Defendant's use of this language [in the warrant] was false, deceptive or misleading as to the amount of the debt" "when considered in the context with Defendant's prior communications." *Id*. at *6. He further stated, "The fact that Defendant consistently listed the amount of the debt as $1,622.42 on these communications does not detract from the misleading nature of the communications." *Id*.

Chief United States District Judge Thomas J. Varlan filed a Memorandum Opinion in *Smith v. Accounts Research, Inc.*, No. 3:10-CV-213, 2012 WL 289835, at *1 (E.D. Tenn. Jan. 31, 2012), on January 31, 2012, which granted summary judgment in favor of the defendant. At the time of the plaintiffs' default, they owed a principal balance of $71.60. *Id*. The contract between the parties in the case stated that the party liable for the debt agreed to pay interest, attorney's fees, and collection fees in case of delinquency. *Id*. Defendant sent Mr. Smith a letter stating the balance of $108.48. *Id*. at *2. Defendant sent a second letter stating that the balance was $116.11. *Id*. A third letter stated the amount due was $121.76. *Id*. A fourth letter stated a

balance of $123.56. *Id*. The defendant moved for summary judgment on plaintiffs' section 1692e(10) claim, and the plaintiffs failed to address this particular argument in their response. *Id*. at 9. Defendant pointed out that the plaintiffs did not dispute that they owed the $71.60. *Id*. Instead, the plaintiffs asserted they did not understand why the amounts changed. *Id*. Judge Varlan noted that Mr. Smith acknowledged signing the contract where he agreed to pay interest, attorney's fees and collection costs. *Id*. Furthermore, Judge Varlan stated that the plaintiffs had failed to submit law stating that a debt collector was required to inform a consumer that the debt may increase due to interest or attorney's fees pursuant to the underlying contract. *Id*. As such, Judge Varlan found that defendant was entitled to summary judgment considering plaintiffs presented no other evidence they were misled by the defendant's letters. *Id*.

In *Lilly v. RAB Performance Recoveries, LLC*, No. 2:12-CV-364, 2013 WL 3834008, at *1 (E.D. Tenn. Jul. 23, 2013) (Varlan, C.J.), the Court granted in part and denied in part a motion to dismiss. *Id*. Plaintiff's defaulted debt had been sold to RAB. Buffaloe & Associates, a law firm representing RAB, undertook "to collect the balance due" on the account, sending a collection letter and ultimately filing a civil warrant and affidavit in state court on behalf of RAB. *Id*. In addition to the amount due listed in the letter, the letter also informed the plaintiff of the possibility of additional fees and contract interest. *Id*.at *2. The civil warrant stated that the amount due was for "the principal amount of $3,464.32, plus court cost in the amount of $114 .50, and service of process fees in the amount of 25.00" *Id*. at *1. The sworn affidavit stated that plaintiff owed $3,464.32. *Id*. The plaintiff alleged several violations including that the collection letter was misleading, constituted an unfair means to collect a debt, and was an attempt to collect an amount not expressly authorized by agreement or law. *Id*. at *2. The plaintiff also alleged that Buffaloe falsely represented the character, amount and legal status of

18

the debt. *Id*. In addition, the plaintiff argued that the letter failed to identify the applicable interest fees and rate, attorney's fees, and date as of which the amount was due in violation of section 1692g(a)(1)'s requirement of stating the amount of debt in the initial communication. *Id*.

Judge Varlan found that the plaintiff had stated a claim in regards to the collection letter. *Id*. at *7. The analysis mainly focused on the 1692g(a)(1) issue and relied upon *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC*, 214 F.3d 872, 876 (7th Cir.2000). Because the safe harbor language here was not sufficiently similar to *Miller*, Judge Varlan found that the plaintiff had stated a claim regarding the collection amount in the letter. *Id*. at *6-7. The letter failed to notify the plaintiff of the exact amount due including interest and other charges. *Id*. at *6. The Court then stated in conclusory fashion that the plaintiff has stated 1692e claims as well. However, it appears this conclusion was only in regards to the letter, for it never mentions any amounts stated in the warrant or affidavit. *Id*. at *7. The Memorandum Opinion addressed the civil warrant and affidavit in terms of the 1692e(11) claim. *Id*.

United States District Judge Curtis L. Collier decided *Robinson v. Sherman Financial Group*, -- F. Supp. 2d --, 2013 WL 3968446, at *1 (E.D. Tenn. July 31, 2013) (Collier, J.). In this case, the Defendant Hosto & Buchan, PLLC sent a collection letter to the plaintiff and listed that the plaintiff owed the current balance of $2,725.22. *Id*. Defendant Hosto sent another letter which stated a balance of $2,747.00. *Id*. Then Defendant Hosto filed a civil warrant and affidavit in state court. *Id*. The warrant stated that the plaintiff owed "a money judgment of $3,201.06 plus cost from a suit filed on a sworn account with the principle [sic] sum of $2,208.59 accrued pre-judgment interest of $550.76 accruing at 6% until date of judgment, reasonable attorney's fees in the amount of $441.72, all of which shall bear post-judgment

interest of 10% per annum beginning from judgment date." *Id*. The affidavit stated that there was a "purchased balance owing of $2,208.59 plus any additional accrued interest." *Id*. at *2.

All defendants moved for summary judgment as to all claims asserted by the plaintiff. *Id*. at *5. Judge Collier noted that the plaintiff alleged in the Amended Complaint that the defendants violated the FDCPA in several ways including that defendants "used false, deceptive, and misleading representations or means in connection with the collection of the debt 'by stating in the Summons for Civil Warrant that Defendant LVNV was entitled to an amount not expressly authorized by the agreement creating the debt or permitted by law, without personal knowledge of whether a contract on which the Defendants allegedly relied to file the collection lawsuits.'" *Id*. The plaintiff also alleged that the suit was defective because of false, deceptive and misleading information in the affidavit. *Id*. Judge Collier further stated that the plaintiff alleged in the Amended Compliant that the defendants sought interest and attorney's fees that could not lawfully be received. *Id*.

Plaintiff argued in response to the summary judgment motion that the different amounts in the summons and the affidavit create an issue of fact whether one is false, deceptive or misleading. *Id*. at *6. The plaintiff also argued that the defendants could not seek interest and attorney's fees without a written contract. *Id*.

Judge Collier concluded that there was a genuine issue of material fact as to the 1692e claims despite the fact that the warrant and the affidavit stated the same principal amount. *Id*. at *6. Judge Collier stated that the issue was to "the amounts Plaintiff was informed he owed to the LVNV Defendants." *Id*. He pointed out that the billing statements, apparently provided by the defendants with their filings, showed a balance of $2,208.59 and an interest rate of 30.49 percent. *Id*. Then the communications received by the plaintiff showed different amounts that

20

progressively increased. *Id*. Those letters did not inform the plaintiff of the applicable interest rate or that the amount was subject to other fees. *Id*. The warrant states two other interest rates. *Id*. Thus, Judge Collier concluded that there was a genuine issue of fact as to the interest rate that applied especially considering the least sophisticated consumer test. *Id*. Judge Collier rejected defendants' argument that the Cardmember Agreement they provided allowed for attorney's fees and interest rates far greater than what was stated in the warrant. *Id*. at *7. He reasoned that the Cardmember Agreement provided was of such poor quality that defendants' contentions could not be verified, that it was a "generic form" and there were no "personal identifiers" to show the agreement was connected to the plaintiff. *Id*. In sum, Judge Collier concluded that there were genuine issues of fact as to what interest rate applied and whether attorney's fees and costs were properly asserted. *Id*. at *8.

Judge Varlan also filed a Memorandum Opinion in *White v. Sherman Financial Group, LLC*, -- F. Supp. 2d --, 2013 WL 5936679, at *1 (E.D. Tenn. Nov. 4, 2013), deciding summary judgment motions filed by the plaintiff and defendants. In *White*, Defendant Buffaloe & Associates, PLC, filed a civil warrant and sworn affidavit in state court. *Id*. The warrant stated the amount due was for "the principal amount of $5,387.93, plus pre and post judgment interest accruing at the statutory rate of 10%, and court costs of this cause of $181.50." *Id*. The affidavit stated the plaintiff owed "$5,387.93." *Id*. Then, Buffaloe sent a letter to the plaintiff informing him of his right to dispute the debt. *Id*. He disputed the debt, and the defendants dismissed the state court suit. *Id*.

The defendants moved for summary judgment as to all claims. *Id*. at *3. Regarding the civil warrant and affidavit, Judge Varlan noted that the plaintiff characterized his argument by stating the "fundamental claim for this violation is that [d]efendants filed the collection lawsuit

without possessing any competent evidence they could use to establish that [p]laintiff owed a debt to LVNV, and knowing that they did not obtain such evidence . . . ." *Id.* The majority of the opinion discusses this "fundamental claim." *Id.* at 3-5. However, it also addresses "plaintiff's arguments regarding the amounts defendants sought to collect in the state action" and whether these violated sections 1692e and 1692f. *Id.* at *6. Judge Varlan concluded that there were no genuine issues of fact for trial. *Id.* He first addresses plaintiff's claim that the amounts stated in the warrant and affidavit are inconsistent, and, thus, one is false or misleading. *Id.* Judge Varlan stated, "The Court finds this argument is meritless, as the affidavit clearly states the amount due, including the possibility of interest, and was used to validate the debt on which the civil warrant is seeking to collect." *Id.* He further stated that "[t]he failure to include the court cost amount would not be misleading, nor would it be an attempt to collect on an amount not authorized by law, given that court costs are authorized by statute." *Id.* Judge Varlan then addressed plaintiff's argument that defendants' failure to show evidence of an agreement permitting the 10% interest rate was a violation of the FDCPA. *Id.* Judge Varlan found this argument "unavailing" because a Tennessee statute provides for this rate. *Id.* Finally, he concluded that summary judgment on these claims was appropriate because "[t]he two statements plaintiff offers are not inconsistent with one another and would not be deceptive to the least sophisticated consumer." *Id.*

The Sixth Circuit recently decided *Clark v. Main Street Acquisition Corp.*, No. 13-3763, -- Fed. Appx. --, 2014 WL 274469 (6th Cir. Jan. 17, 2014). There, plaintiff allegedly defaulted on a credit card account, the account was sold to Main Street Acquisition Corp., and Main Street hired Slovin & Associates Co., to collect the debt. *Id.* at *1. Slovin sent the plaintiff a letter stating that her outstanding balance was $1,439.26. *Id.* The plaintiff requested proof that she owed the debt, and Slovin sent her a packet of information. *Id.* The packet contained a letter

stating the balance due, an affidavit from an employee of Main Street, a banking statement from Household, proof of transfer of the debt, account statements, and transaction summaries. *Id*. The issue in the litigation regarded three statements from the affidavit. *Id*. One was that the affidavit indicated that "[t]he balance due and owing to Plaintiff by Defendant on the Account is $1,429.24, plus interest at the legal rate per annum from June 30, 2010 *and costs*." *Id*. Slovin then filed a collection action in state court and attached the same packet to the complaint. *Id*.

The plaintiff filed an amended complaint and alleged that Main Street had violated the FDCPA by the "intentional filing of false affidavits for the purpose of obtaining judgments against debtors in collection law suits and coercing debtors." *Id*. Main Street moved for summary judgment, and the district court found that the term "costs" was not "deceptive or unfair," that even if it referred to "court costs" the word choice was immaterial, and that it would not have influenced a consumer's decision to pay the debt. *Id*. at *2.

Addressing the alleged 1692e violation for seeking to collect "costs," the Sixth Circuit stated that the law of the state where the state court action was brought allows for the award of costs. *Id*. at *3. The court noted that even though the costs had not yet been awarded when demanded, neither had interest or principal amounts, and the plaintiff made no argument that these were due and owing and that such demand was false or deceptive. *Id*. The court further stated that it would be "reasonable for a consumer to assume that a case headed to court might involve 'costs' that had to be determined." *Id*. As such, the court concluded that the request for costs, which were allowed by state law, does not violate 1692e. *Id*.

The court then addressed the plaintiff's 1692f claims and emphasized that costs were permitted by state law. The court further pointed out that "the district court determined as an 'undisputed fact' that the 'Cardmember Agreement provided that the account user would pay

court costs . . . and other collection costs related to the default to the extent permitted by law . . . .' and that 'the Plaintiff has failed to present any evidence that she did not agree to pay such costs.'" *Id*. at \*4 (quoting the district court's order). The plaintiff argued to the Sixth Circuit that the Cardmember Agreement was "generic and had not been authenticated." *Id*. However, the court stated that the plaintiff failed to provide any evidence to the contrary. *Id*. Thus, the court concluded that the record indicated that costs were expressly authorized by the agreement, and therefore, there was no violation of section 1692f. *Id*.

Finally, Judge Collier filed his memorandum in *Murr v. Tarpon Financial Corporation*, No. 3:10-CV-372, 2014 WL 546690 (E.D. Tenn. Feb. 10, 2014) (Collier, J.). In *Murr*, Tarpon Financial Corporation had purchased Murr's defaulted note and security agreement along with other assets from Fairway Lending. *Id*. at \*1-2. The agreement stated that Murr would pay court costs and atttorney's fees in the event of a default. *Id*. at \*1. Fairway Lending sold the assets to generate proceeds to pay down indebtedness of its own. *Id*. at \*2. Tarpon hired Attorney Kevin J. Jones to represent it in collecting Murr's debt. *Id*. The fee arrangement was that Jones would receive 20% of collected amounts plus expenses. *Id*. Jones obtained an affidavit from Tarpon that indicated Murr's total indebtedness was $6,582.95. *Id*. Jones then sent a letter to Murr, and the letter stated Murr owed $6,582.95 plus $1,316.59 in attorney's fees. *Id*. After receiving no response, Jones filed suit in General Sessions Court for Knox County, and the warrant sought $6,582.95 plus reasonable attorney's fees in the amount of $1,316.59. *Id*. It also sought "court costs and pre and post judgment interest at the underlying contract rate." *Id*.

Murr filed suit against Tarpon and Jones for violations of the FDCPA. *Id*. He alleged that Jones violated the FDCPA by not stating that Tarpon was seeking interest in the initial

communication, i.e. the collection letter, for seeking attorney's fees not authorized by contract in the letter and the warrant, and for not including certain information in the civil warrant. *Id*. at *7.

As to the first issue, Judge Collier relied upon *Miller* for this alleged 1692g(a)(1) violation and concluded that Tarpon sought interest in the civil warrant that was not listed in the initial communication. *Id*. at *8. Thus, the "letter's recitation of the principal amount violated § 1692g because it did not included the total amount due." *Id*. Regarding the attorney's fees issue, Judge Collier concluded that the underlying agreement provided for the collection of attorney's fees. *Id*. at *11. He did not accept the plaintiff's argument that there was a violation of the Act because the letter and warrant stated a specific sum, and this sum had yet to be determined because the fee arrangement was contingent upon sums collected. *Id*. Finally, as to whether the civil warrant violated 1692e(11), Judge Collier found in favor of the plaintiff.

**C.  Whether all defendants violated various sections of the FDCPA due to the warrant and affidavit listing "inconsistent" amounts?**

This Court addressed this argument previously in its March 31, 2014 Memorandum Opinion and Order, [Doc. 154]. This Court concluded that the amounts were not inconsistent, and thus, there was no genuine issue of material fact as to whether the alleged inconsistencies violated 1692e, 1692f and various other subsections. *See also White*, 2013 WL 5936679, at *6. As stated above, the warrant states the amount due is "$3,041.18, plus the cost of this cause by reason of a suit filed on a sworn account, here to the Court in the principle [sic] amount of $2,329.45 due and payable from the Defendant, accrued prejudgment interest in the amount of $245.84, accruing until the date of judgment at the contract rate of interest which is 6% per annum, reasonable attorney's fees in the amount of $465.89, all of which shall bear post-judgment interest at the rate of ten (10%) percent per annum beginning from the date of

judgment." [Doc. 18-1, pg. 1]. The affidavit stated that as of the date of assignment, the plaintiff owed "$2,329.45 plus any additional accrued interest." [Doc. 18-1, pg. 2].

The principal amounts are the same. Thus, they are not inconsistent. The affidavit merely states the principal amount "plus any additional accrued interest is due." The warrant states specific rates for pre-and-post judgment interest. However, these rates are not inconsistent with the affidavit because it does not list specific amounts. It merely states that additional interest will accrue. As for attorney's fees and costs, it is true that the affidavit does not state those are due and owing. It does not state as such because they have not yet accrued. Thus, there is no inconsistency regarding attorney's fees and costs.

Moreover, for the reasons set out below, the agreement allows collection of attorney's fees, and state law allows collection of costs. *See* Tenn. Code Ann. § 20-12-101 (2010)[6] (allowing for the collection of costs); Tenn. R. Civ. P. 54.04(1) (same); *see also Clark*, 2014 WL 274469, at *3; *White*, 2013 WL 5936679, at *6. Just because the warrant lists these and the affidavit does not, does not make them inconsistent when they are amounts that can legally be collected. The least sophisticated consumer would not find this false or misleading. This conclusion is the same conclusion reached by Judge Varlan in *White*, 2013 WL 5936679 at *6. Again, this Court finds no issue of fact for the alleged violations of 1692e, 1692f and the various subsections thereunder.

**D. Whether all defendants violated various sections of the FDCPA because the warrant and affidavit requested interest and attorney's fees and the defendants have allegedly failed to produce a contract allowing for such collection?**

The Court also addressed this argument in its prior Memorandum Opinion and Order but will elaborate on its reasoning here. The Court found the reasoning in *White* persuasive. *Id.*

---

[6] The Court will use the 2010 version of the Tennessee Code throughout this Opinion because the civil warrant and affidavit were filed in 2010.

There, Judge Varlan found "plaintiff's argument that defendant failed to show evidence of an agreement permitting the 10% interest rate unavailing in light of the statute which provides for this rate." *Id.* It is undisputed that Tennessee law allows for the collection of pre- and post-judgment interest. *See* Tenn. Code Ann. § 47-14-121, -123 (2010). Thus, the contract need not be produced stating that interest may be collected since Tennessee law specifically allows for such collection. *See Clark*, 2014 WL 274469, at *3-4; *White*, 2013 WL 5936679, at *6.

Furthermore, Tennessee adheres to the "American rule" for award of attorney fees. *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998); *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985). This rule states that a party in a civil action may recover attorney's fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case. *Taylor*, 158 S.W.3d at 359; *John Kohl*, 977 S.W.2d at 534.

Here, the defendant contends that the Cardmember Agreement produced by it specifically states that the account holder promises to pay collection costs including attorney's fees. [Doc. 155, pg. 7] (summarizing [Doc. 120-1, p. 12, ¶ 18]). Furthermore, the record contains the plaintiff's signature on an application, and at her deposition, she identified her signature, [Doc. 106, pg. 4, 120-1, pg. 6]. Also at the deposition, the following exchange took place:

> Q. Okay. Is it fair to say, generally speaking, that when you don't pay a credit card bill in full, interest accrues?
>
> A. Yes.
>
> Q. Is it fair to say that when you signed the application for the credit card, you agreed to a rate of interest in that credit card agreement?
>
> A. Yes.

Q. If that agreement also says that you'll pay attorney fees, do you agree that that means you will pay attorney fees?

A. I don't know that it says that.

Q. If it does say that, generally speaking, is the person who signs the agreement bound by it?

A. I would assume so.

Q. Is it fair to say that you understood that your Credit One account -- strike that. Is it fair to say that you understood that the amount that you owed on the Credit One account would accrue interest?

A. Yes.

Q. Exhibit 3 references the right to collect the purchase balance of $2,329.45, plus any additional accrued interest, correct?

A. That's what it says, yes.

[Doc. 155-1, pg. 4]. Therefore, she does not deny that she agreed to pay attorney's fees.

This Court recognizes that the plaintiff argues that the Cardmember Agreement is dated November 2006, and the plaintiff's application is dated November 27, 2007, and thus, the defendants have failed to produce a contract signed by the plaintiff, [Doc. 153, pg. 7]. However, it is the plaintiff's burden to come forth with evidence to show that there is a genuine issue of material fact for trial regarding whether the contract allowed for attorney's fees.[7] A conclusory argument by counsel is not evidence, especially in light of the fact that the plaintiff did not deny agreeing to pay attorney's fees at her deposition. This Court understands that one could argue

---

[7] In reality, it appears that plaintiff attempts to shift the burden of proof on this issue. Plaintiff has the burden of establishing, as an element of her case, that a contract exists or that the contract does not provide for the interest or attorney's fees claimed. It is not the defendants' burden to show the contrary. Plaintiff has admitted, in deposition testimony, as noted above, that she signed an agreement providing for accrued interest on any unpaid balance, and she has filed no affidavit or other proof to establish a genuine issue of fact on the terms of the contract. So far as the Court can tell, plaintiff did not submit a request for document production or interrogatory to defendant nor any request for admission. Plaintiff simply hopes to get before a jury on conclusory and speculative allegations without providing evidence. She is not permitted to do so.

28

that she did not necessarily confirm that she agreed to pay them either. However, the plaintiff may not simply rest on mere allegations or denials contained in her pleadings. *Anderson*, 477 U.S. at 256. Instead, she must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable." *Id.* at 248-52. She has produced no evidence; she merely argues that there is an issue of fact because defendants cannot produce a contract. The defendants produced a contract, and she failed to present evidence to show an issue regarding the contract's authenticity. Counsel's argument is not evidence. There is no evidence from the plaintiff that she did not agree to pay attorney's fees in case of a default. *See Clark*, 2014 WL 274469, at *4.

Based on the reasons above, this Court finds that there is no genuine issue of material fact as to whether defendants violated various sections of the FDCPA because the warrant and affidavit requested interest and attorney's fees, even though the defendants have failed to produce a contract allowing for such collection. *See Clark*, 2014 WL 274469, at *3-4; *White*, 2013 WL 5936679, at *6; *see also Murr*, 2014 WL 546690, at *9-13.

**E. Whether all defendants violated various sections of the FDCPA because the specific interest rates stated in the warrant, affidavit, and other filings in the case were different?**

For the first time, the plaintiff specifically argues that the warrant and affidavit violate the FDCPA because the interest rates stated in these documents differ from each other **and** from other evidence in the record.[8] The plaintiff never mentioned the collection letters' amounts,[9] the interest rates of the billing statements, or the account event history interest rate as a basis for an

---

[8] The plaintiff neither alleges in the Complaint nor argues now that this other evidence of record violates the FDCPA. The allegations and arguments only assert that the warrant and affidavit are misleading, deceptive or false and, thus, violate the FDCPA sections cited.

[9] The plaintiff does not attempt to calculate the interest rate applied to the principal in these letters. She merely notes the specific amounts and that they increase.

29

issue of fact as to why the interest rates listed in the warrant and affidavit are misleading in any of the previous filings. The plaintiff did, however, refer to *Robinson* in earlier filings. Nonetheless, in this Court's opinion, Document 153 contains the first direct argument that the warrant and affidavit are misleading, deceptive or false because different interest rates were listed on other documentation received by the plaintiff. Even still, the argument is not nearly as clear as it could be because it merely mentions the other documents' rates in the "Facts" section, but still argues the violations of the FDCPA are because of the differences between the warrant and the affidavit. As stated above, this Court finds that the warrant and affidavit do not list different interest rates. The affidavit does not list a specific interest rate at all. Therefore, the interest rates are not misleading. As a precaution, however, the Court will address whether the interest rates are misleading when considering other documents of record.

It is true that the collection letters list increasing amounts for the "current balance."[10] It is also true that the account event history lists an interest rate of 19 percent, that the March 3, 2009 billing statement lists an interest rate ranging from 18.90 percent to 23.90 percent, that the warrant lists prejudgment interest of 6 percent and postjudgment interest of 10 percent, and that the affidavit does not specify the exact rate of interest. Furthermore, Judge Collier found in *Robinson* that there was an issue of fact as to what interest rate applied when documents in the

---

[10] The defendant takes issue with two of the letters. First, the defendant argues that the August 23, 2010 letter predates the filing of the FDCPA Complaint by more than one year and cannot form the basis of an actionable claim because of the statute of limitations. The defendant is correct in that it could not form the basis of a claim because it does exceed the statute of limitations. *See* 15 U.S.C. § 1692k(d). However, as previously stated, the plaintiff does not claim that the letter itself violates the Act; the plaintiff apparently is attempting to use it as evidence to show that there is an issue of fact whether the interest rates listed in the warrant and affidavit are false or misleading.

Second, the August 19, 2011 letter was not mailed to the plaintiff, but it was, instead, mailed to the plaintiff's attorney. "Whether communications to a debtor's attorney are within the scope of the FDCPA has not been determined by the Sixth Circuit, and the Circuit Courts that have examined the issue are split." *See Barany–Snyder v. Weiner*, 539 F.3d 327, 333 n.2 (6th Cir. 2008). This Court need to decide that issue for the reason stated above; the plaintiff does not claim that this particular letter was a violation of the Act. The plaintiff is attempting to use the letter as evidence as to why the warrant and affidavit violate the Act.

record listed different rates. 2013 WL 3968446, at *6-7; *see also Stonecypher*, 2011 WL 3489685, at *6.

First, there is no issue of fact regarding the statement in the affidavit. It states that as of the date of assignment, the plaintiff owed "$2,329.45 plus any additional accrued interest." [Doc. 18-1, pg. 2]. It does not list a specific amount of interest. Thus, the least sophisticated consumer would not be misled by a request for an unspecified amount of interest even considering the varying rates in other documents. By stating "accrued interest," the affidavit was not inconsistent with any of the other documents in the record. Therefore, it is not false or misleading and does not violate the various sections of the FDCPA.

Second, regarding the warrant, this Court agrees with Judge Collier in *Robinson*; there seems to be an issue of fact as to what interest rate applied. However, this Court respectfully disagrees with Judge Collier's holding in that the issue is material. A statement cannot "mislead," within the meaning of the FDCPA, unless it is material, so a false but non-material statement is not actionable. *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588 (6th Cir. 2009). Here, the plaintiff only alleges and argues that the warrant's statement of the specific interest rates are misleading or false. The warrant lists the least amount of interest sought to be collected of all the documents. The Cardmember Agreement allows for the collection of interest, and the plaintiff admits that she agreed to pay the interest rate in the contract. The plaintiff does not argue that the interest rates listed in the warrant are higher than those allowed by the contract. Therefore, the fact that the warrant seeks to collect a lesser amount of interest is not material as to whether the least sophisticated consumer would pay the debt. As such, it is not false, deceptive or misleading. Accordingly, defendants are entitled to summary judgment on this issue as there is no violation of any of the FDCPA sections.

**F. Whether all defendants violated various sections of the FDCPA because the interest rates listed in the warrant and affidavit were for rates not allowed by Tennessee law?**

The plaintiff makes this allegation in her Complaint, but she never raises the issue in opposition to the defendants' summary judgment motion as to all claims. She fails to cite any law to support her conclusory allegation. She does not present any evidence that the rates requested are contrary to Tennessee law. As such, the Court need not address the argument, and summary judgment on this issue is proper.

Nevertheless, this Court will briefly address some points related to this allegation. First, in regards to the affidavit, no specific interest rate is requested. However, the Complaint alleges that the rate of interest in the affidavit was a rate greater than that "allowed under Tennessee law for **unwritten** contracts." [Doc. 1, pg. 18 ¶¶ 75 and 77] (emphasis added). If no specific rate is requested, then it cannot be greater than what the law allows unless the law does not allow any interest to be collected. In addition, although the plaintiff argues that the defendant cannot produce a written contract, one has been produced, and the plaintiff does not argue that no written contract actually exists. Moreover, even if this claim is one pursuant to an unwritten contract, Tennessee law allows for the collection of interest. Tennessee Code Annotated section 47-14-121 states:

> Interest on judgments, including decrees and municipal court judgments, shall be computed at the effective rate of ten percent (10%) per annum, except as may be otherwise provided or permitted by statute; provided, that where a judgment is based on a note, contract, or other writing fixing a rate of interest within the limits provided in § 47-14-103 for that particular category of transaction, the judgment shall bear interest at the rate so fixed.

Tenn. Code Ann. § 47-14-121 (2010). Regarding prejudgment interest, section 47-14-123 states:

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the

32

state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum; provided, that with respect to contracts subject to § 47-14-103, the maximum effective rates of prejudgment interest so awarded shall be the same as set by that section for the particular category of transaction involved. In addition, contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47-14-103.

*Id.* 47-14-123. Therefore, summary judgment on this issue is appropriate.

Second, the plaintiff alleged that the warrant was false or misleading because Tennessee law does not allow prejudgment interest at a rate of 10 percent. [Doc. 1, pg. 10, ¶ 47]. The same code same section as stated above applies here. The record establishes that there was a written contract. Thus, had the plaintiff addressed this issue, then she would have had to show that the rate requested was one not allowed by section 47-14-123 for written contracts. That section states again that "contracts may expressly provide for the imposition of the same or a different rate of interest to be paid after breach or default within the limits set by § 47-14-103." *Id.* at 47-14-123. Therefore, the plaintiff should have told the Court what the limits were pursuant to section 47-14-103.

That section states:

Except as otherwise expressly provided by this chapter or by other statutes, the maximum effective rates of interest shall be as follows:

(1) For all transactions in which provisions of other statutes fix a maximum effective rate of interest for particular categories of creditors, lenders, or transactions, the rate so fixed;

(2) For all written contracts, including obligations issued by or on behalf of the state of Tennessee, any county, municipality, or district in the state, or any agency, authority, branch, bureau, commission, corporation, department, or instrumentality thereof, signed by the party to be charged, and not subject to subdivision (1), the applicable formula rate; and

33

(3) For all other transactions, ten percent (10%) per annum.

*Id*. 47-14-103. Therefore, the applicable formula rate is needed for this determination. The Tennessee Code defines the applicable formula rate as:

> "Applicable formula rate" at any given time is the greater of:
>
> (A) The "formula rate" in effect at such time; or
>
> (B) The "formula rate" last published in the Tennessee Administrative Register prior to such time, pursuant to § 47-14-105;

*Id*. 47-4-102(3). The "formula rate" is defined as follows:

> "Formula rate" means an annual rate of interest four (4) percentage points above the average prime loan rate (or the average short-term business loan rate, however denominated) for the most recent week for which such an average rate has been published by the board of governors of the Federal Reserve System, or twenty-four percent (24%) per annum, whichever is less; provided, that in the event that the board of governors ceases to publish the average rate, or in the event that the formula rate should be adjudicated or become inapplicable for any reason whatsoever, the formula rate is, and shall remain, twenty-four percent (24%) per annum until the general assembly otherwise provides. If the board of governors fails to publish the average rate for four (4) consecutive weeks, it shall be deemed to have ceased to publish the average rate

*Id*. 47-4-102(7). The plaintiff did not provide the Court with the formula rate last published in the Tennessee Administrative Register and did not supply the average prime loan rate (or the average short-term business loan rate, however denominated) for the most recent week for which such an average rate had been published by the board of governors of the Federal Reserve System. Therefore, this Court cannot determine whether the prejudgment interest rate stated in the warrant is actually false. It is the plaintiff's burden to do so in order to show that there is an

34

issue of fact for trial. Thus, for this additional reason, the defendant is entitled to summary judgment on this issue.

### G. Whether there is an issue of fact regarding vicarious liability?

Even though this Court has concluded that there is no genuine issue of material fact for trial, this Court will still decide the vicarious liability issue since plaintiff addressed the issue in her Response, [Doc. 153, pgs. 13-14]. This Court finds the reasoning and the cases cited in *White* persuasive. 2013 WL 5936679, at \*10-11. It appears to be undisputed that LVNV hired Resurgent and Hosto to carry out debt collection efforts. In addition, Hawkins was an "Authorized Representative for LVNV." [Doc. 18-1, pg. 2]. Therefore, for the reasons stated in *White*, this Court concludes that LVNV may be held liable for any of Hosto or Hawkins's FDCPA violations. As state above, however, there are no violations, so this issue is actually moot.

## IV. CONCLUSION

For the reasons set forth above, this Memorandum Opinion confirms and elaborates upon this Court's earlier Memorandum Opinion and Order deciding Defendant LVNV and Hawkins's Motion for Summary Judgment, [Doc. 99]. In addition, for the reasons stated above, Defendant Hosto's Motion for Summary Judgment, [Doc. 149], is GRANTED.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE